MC LAW NEVADA
Robert McCoy, No. 9121
1775 Village Center Circle, Suite 110
Las Vegas, Nevada 89134
(702) 570-5435
rob@mclawnevada.com

STEPTOE LLP
Michael J. Allan (*pro hac vice to be filed*)
Joseph F. Ecker (*pro hac vice to be filed*)
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
mallan@steptoe.com
jecker@steptoe.com

Attorneys for Plaintiff Louis Vuitton Malletier S.A.S.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LOUIS VUITTON MALLETIER S.A.S.,<br><br>Plaintiff,<br><br>vs.<br><br>POWER PROMOTIONS LLC; POWER LOGISTICS LLC; DEAN KATRIS; and NICK KATRIS<br><br>Defendants. | Case No. 2:26-cv-3781<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Louis Vuitton Malletier S.A.S. ("Louis Vuitton") complains and alleges against Defendants Power Promotions LLC ("Power Promotions"), Power Logistics LLC ("Power Logistics") (Power Promotions and Power Logistics together referred to as "Power"), Dean Katris and Nick Katris (all collectively referred to as "Defendants") as follows:

**STATEMENT OF CASE**

1. This is an action for willful trademark counterfeiting, trademark infringement, false association, trademark dilution, and deceptive trade practices arising from Defendants' scheme to design, manufacture, import, advertise, offer for sale, sell, and distribute bags and accessories bearing infringements of Louis Vuitton's world-famous trademarks to customers across the country.

2. Defendants are Las Vegas-based designers, manufacturers, and suppliers of marketing and promotional merchandise whose customers are primarily casinos and entertainment venues. Rather than develop their own designs, Defendants built entire product lines around knockoffs of Louis Vuitton's most iconic intellectual property and used Louis Vuitton's significant goodwill to create the false impression that Louis Vuitton and Defendants are related—all for Defendants' commercial gain.

3. Specifically, Defendants intentionally designed, manufactured, imported, advertised, promoted, offered for sale, sold, and distributed a "Lux Monogram Mahogany" bag collection featuring copies of Louis Vuitton's iconic Monogram Design trademark, including its three famous Stylized Flower Design trademarks. In a particularly brazen move, Defendants replaced the famous overlapping "LV" logo with either an overlapping "LL" logo (Infringing Monogram

Design 1") or "Journeyman" logo ("Infringing Monogram Design 2") to purposefully infringe the iconic Louis Vuitton Monogram Design and to effectively link Louis Vuitton with Defendants. The "LL" logo and "Journeyman" logo are evocative of Defendants' registered "Loulu" and "Journeyman" word marks, respectively, and Defendants use both logos on numerous other products. Infringing Monogram Designs 1 and 2 and Louis Vuitton's Monogram Design appear below:

| **Infringing Monogram Design 1** | **Infringing Monogram Design 2** | **Louis Vuitton Monogram Design** |
|---|---|---|
|  |  |  |

4. Defendants also intentionally designed, manufactured, imported, advertised, promoted, offered for sale, sold, and distributed a "lux" bag collection featuring copies of Louis Vuitton's iconic Damier Design trademark, including exact copies of Louis Vuitton's iconic squares with a checkered pattern of light and dark with the unusual contrast of weft and warp. Defendants also replaced the famous "LOUIS VUITTON PARIS" logo in the black square of each pattern segment with Defendants' own "Journeyman" logo ("Infringing Damier Design") to purposefully infringe the iconic Louis Vuitton Monogram Design and to effectively link Louis Vuitton with Defendants. The Infringing Damier Design and Louis Vuitton's Damier Design appear below:

| Infringing Damier Design | Louis Vuitton Damier Design |
|---|---|
|  |  |

5. At the request of their customers, Defendants even helped customers manufacture and import products with other customized designs that infringe Louis Vuitton's iconic Monogram Design and Damier Design trademarks by using a customer's requested logo instead of Defendants' "LL" or "Journeyman" logos.

6. Defendants' "lux" bag collection bearing the Infringing Monogram Designs 1 and 2 and Infringing Damier Design consisted of numerous products that featured color combinations, product shapes, and design aesthetics intended to mimic authentic Louis Vuitton products (the "Infringing Products"). For example, some products replaced the "LOUIS VUITTON" trademark on bag straps with the "Loulu" word mark. Other products even infringed other iconic Louis Vuitton trademarks such as Louis Vuitton's S-Lock Design trademark. Photographs of examples of the Infringing Products and the authentic Louis Vuitton products they were intended to imitate appear below:

| The Infringing Products | Louis Vuitton Authentic Products |
| --- | --- |
|  |  |
|  |  |
|  |  |
|  |  |

| | |
|---|---|
|  |  |
| LOULU |  |
|  |  |
|  |  |

| | |
|---|---|
|  |  |
|  |  |
|  |  |

7. Upon information and belief, Defendants sold and distributed over 120,000 Infringing Products to dozens of casino and entertainment venue customers throughout the country. Defendants' customers then further sold and distributed the Infringing Products to tens of thousands of patrons of their casinos and venues.

8. Upon information and belief, Defendants also advertised and promoted the Infringing Products to numerous customers across the country through product catalogs, physical product displays, and online. Not only did Defendants earn millions of dollars from direct sales, but Defendants deliberately used Louis Vuitton, Louis Vuitton's famous trademarks, and Louis Vuitton's substantial goodwill to

effectively link Louis Vuitton with Defendants and their "Loulu" and "Journeyman" brand and related logos, word marks, and products. Defendants did so to attract attention, customers, goodwill, and overall financial and commercial benefit to Defendants, and to increase sales revenue for other product and service offerings of Defendants, including other products featuring the "Loulu" and "Journeyman" brands and logos.

9. Defendants also designed, manufactured, sold, and distributed advertising and promotional displays and materials bearing the Louis Vuitton Trademarks. These advertising and promotional displays and materials included display cases, backdrops, and signage bearing the Louis Vuitton Trademarks for their customers to use to display, market, and promote the Infringing Goods.

10. Defendants have never been authorized, licensed, or permitted by Louis Vuitton to use any of the Louis Vuitton Trademarks.

11. Through this conduct, Defendants have (i) engaged in trademark counterfeiting; (ii) engaged in trademark infringement; (iii) deceived the public by creating the false impression that Defendants and their goods are connected to, affiliated with, or sponsored by Louis Vuitton; (iv) diluted the distinctive quality of Louis Vuitton's famous marks; and (v) engaged in deceptive trade practices and unfair competition in violation of Nevada law. Defendants' acts are likely to cause, and have caused, consumer confusion, mistake, and deception, and have caused and will continue to cause significant and irreparable harm to Louis Vuitton and its valuable goodwill absent injunctive relief.

## PARTIES

12. Louis Vuitton is a *société par actions simplifiée* duly organized and existing under the laws of France with a principal place of business at 2 rue du Pont Neuf, Paris, France. Louis Vuitton, directly or through its related companies, is engaged, *inter alia*, in the design, manufacture, distribution, and sale in interstate and foreign commerce of prestigious luxury merchandise including, without limitation, handbags, luggage, travel bags, small leather goods, apparel, shoes, scarves, jewelry, watches, and other fashion accessories bearing one or more of Louis Vuitton's famous trademarks (the "Louis Vuitton Products").

13. Louis Vuitton is the sole and exclusive distributor in the United States of Louis Vuitton Products.

14. Defendant Power Promotions LLC is a limited liability company organized under the laws of the State of Nevada with its principal place of business at 6845 Escondido Street, Suite 107, Las Vegas, Nevada 89119.

15. Power Promotions was founded in 2010 and designs, imports, manufactures, advertises, offers for sale, sells, and distributes marketing and promotional products to various organizations and industries, including but not limited to casinos and entertainment venues.

16. Defendant Power Logistics LLC is a limited liability company organized under the laws of the State of Nevada with its principal place of business at 6845 Escondido Street, Suite 107, Las Vegas, Nevada 89119.

17. Upon information and belief, Power Logistics LLC was founded in 2022 and provides transportation and trucking services, including to transport Infringing Products through interstate commerce.

18. Upon information and belief, Defendant Dean Katris is an individual who resides at 2163 Lewiston Pl., Henderson, Nevada 89044. Dean Katris is listed as the "Manager" of Power Promotions and Power Logistics on the Nevada Secretary of State website and on trademark applications at the United States Patent & Trademark Office ("USPTO") that are owned by Power Promotions and were used in the infringing conduct complained of herein. Dean Katris regularly conducts business from Power Promotions' principal place of business at 6845 Escondido Street, Suite 107, Las Vegas, Nevada 89119.

19. Upon information and belief, Dean Katris is, and at all relevant times was, the manager of Power Promotions and co-manager of its affiliate Power Logistics. At all relevant times Dean Katris directed, controlled, and managed the day-to-day business of Power Promotions and Power Logistics, including its product selection, product design and naming, product manufacturing, product importation, supplier relationships, pricing, catalog preparation, advertising, sales, and delivery of products to customers. Upon information and belief, Dean Katris personally authorized, directed, participated in, and ratified each of the infringing acts alleged herein, was the moving and driving force behind Power Promotions and Power Logistics, and received a direct financial benefit from them.

20. Upon information and belief, Defendant Nick Katris is an individual who resides at 2163 Lewiston Pl., Henderson, Nevada 89044. Nick Katris is listed as the "Manager" of Power Logistics on the Nevada Secretary of State website. Nick Katris regularly conducts business from Power Logistics' principal place of business at 6845 Escondido Street, Suite 107, Las Vegas, Nevada 89119.

21. Upon information and belief, Nick Katris is, and at all relevant times was, the co-manager of Power Logistics and played a role in operating Power Promotions. Upon information and belief, Nick Katris directed, controlled, and managed the day-to-day business of Power Promotions and Power Logistics, including its product selection, product design and naming, supplier relationships, product manufacturing, product importation, supplier relationships, pricing, catalog preparation, advertising, sales, and delivery of products to customers. Upon information and belief, Katris personally authorized, directed, participated in, and ratified each of the infringing acts alleged herein, was the moving and driving force behind Power Promotions and Power Logistics, and received a direct financial benefit from them.

## JURISDICTION AND VENUE

22. The claims herein arise under the Trademark Act of 1946, 15 U.S.C. § 1051, et seq. (the "Lanham Act"), for trademark counterfeiting, trademark infringement, false association, and dilution of USPTO-registered trademarks.

23. This Court has original subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b). This Court has supplemental jurisdiction over Louis Vuitton's state law claim pursuant to 28 U.S.C. §§ 1338(b) and 1367(a) because those claims are joined with substantial and related claims under the trademark laws of the United States and form part of the same case or controversy.

24. This Court has personal jurisdiction over Power Promotions because it (a) is organized under the laws of, and resides in, the State of Nevada; (b) maintains its principal place of business in Las Vegas, Nevada, within this District; (c) is

purposefully, systematically, and continuously engaged in business in this District; and (d) committed, directed, and controlled the unlawful conduct complained of herein from within this District, including by designing, manufacturing, importing, marketing, offering for sale, selling, warehousing, and shipping the Infringing Products from this District.

25. This Court has personal jurisdiction over Power Logistics because it (a) is organized under the laws of, and resides in, the State of Nevada; (b) maintains its principal place of business in Las Vegas, Nevada, within this District; (c) is purposefully, systematically, and continuously engaged in business in this District; and (d) committed, directed, and controlled the unlawful conduct complained of herein from within this District, including by designing, manufacturing, importing, marketing, offering for sale, selling, warehousing, and shipping the Infringing Products from this District.

26. This Court has personal jurisdiction over Dean Katris because, upon information and belief, he (a) resides in this District and the State of Nevada; (b) manages and conducts the business of Power Promotions and Power Logistics from within this District; and (c) personally authorized, directed, and participated in the unlawful conduct complained of herein within this District. Dean Katris is the moving, active, and conscious force behind Power's infringement of the Louis Vuitton Trademarks, as alleged herein.

27. This Court has personal jurisdiction over Nick Katris because, upon information and belief, he (a) resides in this District and the State of Nevada; (b) manages and conducts the business of Power Logistics and Power Promotions from within this District; and (c) personally authorized, directed, and participated in the

unlawful conduct complained of herein within this District. Nick Katris is the moving, active, and conscious force behind Power's infringement of the Louis Vuitton Trademarks, as alleged herein.

28. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all named Defendants reside in this District and the State of Nevada and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

### A. Louis Vuitton and the Louis Vuitton Trademarks

29. Since its founding in 1854 in Paris as a luggage and trunk business, Louis Vuitton has grown into one of the world's premier fashion houses, known for its high-quality luggage, travel bags, handbags, small leather goods, scarves, jewelry, watches, and many other fashion and luxury goods.

30. To protect and maintain the image of the brand, Louis Vuitton Products are sold exclusively through boutiques owned and operated by Louis Vuitton and its related companies, some of which are located within high-end retail stores such as Saks Fifth Avenue, Neiman Marcus, and Bloomingdale's, and through the Louis Vuitton website, http://us.louisvuitton.com. Louis Vuitton does not sell, license, or authorize the use of its trademarks on promotional or giveaway merchandise.

31. Louis Vuitton is the owner of numerous world-famous and iconic trademarks, including, without limitation: the Louis Vuitton Monogram Design trademarks, consisting of a repeating pattern featuring the interlocking LV Logo design mark and three Stylized Flower Design marks (the "Monogram Design Trademarks"); the Louis Vuitton Décor Florale trademark, consisting of a repeating

pattern of the three Stylized Flower Design marks without the LV Logo (the "Décor Florale Design Trademark"); each of the three Stylized Flower Design marks (the "Stylized Flower Design Trademarks"); the Louis Vuitton Damier Design trademarks, consisting of squares with a checkered pattern of light and dark with the unusual contrast of weft and warp, as well as trademarks that include the LOUIS VUITTON PARIS logo in the black square of each pattern segment (the "Damier Design Trademarks"); and the S-Lock design trademark (the "S-Lock Design Trademark"); (Monogram Design Trademarks, Décor Florale Design Trademark, Stylized Flower Design Trademarks, Damier Design Trademarks, and S-Lock Design Trademark, collectively, the "Louis Vuitton Trademarks").

32. The Louis Vuitton Trademarks are registered on the Principal Register of the USPTO for use in connection with a variety of goods including, inter alia, handbags, purses, tote bags, travel bags, garment bags, backpacks, rucksacks, toiletry bags, and vanity cases. Examples of the Louis Vuitton Trademarks are listed in the table below, and true and correct copies of the U.S. registration certificates for the Louis Vuitton Trademarks are attached as Exhibit 1.

| Mark | Reg. No. | Reg. Date | Representative Class 18 Goods |
|---|---|---|---|
| ***The Monogram Design Trademark*** | | | |
|  | 297,594 | 09/20/1932 | Class 18: Trunks, valises, traveling bags, satchels, hat boxes and shoe boxes used for luggage, handbags, and pocketbooks |

| | | | |
|---|---|---|---|
| | 4,192,541 | 08/21/2012 | Class 18: Boxes of leather or imitation leather for packaging and carrying goods; traveling bags; trunks; suitcases; vanity cases sold empty; toiletry bags sold empty; backpacks; handbags; attaché cases; leather document cases; wallets; purses; leather key cases. |
| ***The Décor Florale Design Trademark*** | | | |
| | 3,107,072 | 06/20/2006 | Class 18: Leather and imitation leather products, namely, traveling bags, traveling sets comprised of bags or luggage, trunks and suitcases, garment bags for travel purposes; vanity cases sold empty, rucksacks, shoulder bags, handbags, attaché cases, document wallets and briefcases made of leather, pouches made of leather, wallets, purses, business card cases, credit card cases; umbrellas. |
| ***The Stylized Flower Design Trademarks*** | | | |
| | 2,181,753 | 08/18/1998 | Class 18: Goods made of leather or imitations of leather are not included in other classes, namely, boxes made from leather; trunks, valises, traveling bags, luggage for travel, garment bags for travel, vanity cases sold empty, rucksacks, hand bags, beach bags, shopping bags, shoulder bags, attache cases, briefcases, and fine leather goods, namely, pocket wallets, purses, leather key holders, business card cases, calling card cases, credit card cases, and umbrellas. |



MC LAW

| | | | |
|---|---|---|---|
| | 2,177,828 | 08/04/1998 | Class 18: Goods made of leather or imitations of leather are not included in other classes, namely, boxes made from leather, trunks, valises, traveling bags, luggage for travel, garment bags for travel, vanity cases sold empty, rucksacks, hand bags, beach bags, shopping bags, shoulder bags, attaché cases, briefcases, and fine leather goods, namely, pocket wallets, purses, leather key holders, business card cases, calling card cases, and credit card cases, umbrellas |
| | 2,773,107 | 10/14/2003 | Class 18: Travel bags, travel bags made of leather; luggage trunks and valises, garment bags for travel, vanity-cases sold empty; rucksacks, shoulder bags, handbags; attache cases, briefcases, drawstring pouches, pocket wallets, purses, business card cases made of leather or of imitation leather, credit card cases made of leather or of imitation leather. |
| ***The Damier Design Trademarks*** | | | |
| | 3,576,404 | 02/17/2009 | Class 18: Boxes of leather or imitation leather for packaging and carrying goods, trunks, suitcases, traveling sets comprised of matching luggage, traveling bags, luggage, garment bags for travel, toiletry cases sold empty. Rucksacks, satchels, handbags, beach bags. Leather shopping bags, sling bags, suit carriers, shoulder bags, waist bags, purses, travel cases, |

| | | | |
|---|---|---|---|
| | | | briefcases, briefcase-type portfolios, leather pouches, wallets, change purses, key cases, business card cases, calling card cases. |
|  | 7,599,648 | 12/10/2024 | Class 18: Boxes of leather or imitation leather; traveling bags; leatherware in the nature of traveling bag sets; trunks being luggage and suitcases; vanity cases, not fitted; rucksacks; handbags; sport bags; attache cases made of leather; briefcases made of leather; pocket wallets; wallets; change purses; business card cases; leatherware in the nature of key cases. |
| ***S-Lock Design Trademark*** | | | |
|  | 3,066,114 | 3/07/2006 | Class 18: Leather and imitation leather products, namely, handbags, and purses |

33. The above-referenced registrations are owned by Louis Vuitton, are valid, subsisting, and in full force and effect, and are registered on the Principal Register of the USPTO. Nearly all of the registrations have become incontestable pursuant to 15 U.S.C. § 1065, constituting conclusive evidence of the validity of the marks, Louis Vuitton's ownership of the marks, and Louis Vuitton's exclusive right to use the marks in commerce pursuant to 15 U.S.C. § 1115(b).

34. Louis Vuitton has invested millions of dollars and over a century of time and effort to create consumer recognition in the Louis Vuitton Trademarks to

ensure that the public, not only in the United States but throughout the world, associates them with high-quality luxury goods emanating exclusively from Louis Vuitton.

35. As a result of Louis Vuitton's efforts, millions of consumers have been exposed to the Louis Vuitton Trademarks through advertising campaigns, in mainstream and fashion magazines and other periodicals, as depicted on television and in motion pictures, in songs, on the Internet and social media, and in other forms of unsolicited media coverage.

36. Louis Vuitton has developed a worldwide reputation for high-quality luxury goods, and the public has come to exclusively and immediately identify products bearing the Louis Vuitton Trademarks, and the goodwill associated therewith, with Louis Vuitton.

**B. Defendants' Unlawful Conduct**

37. Defendants own and operate a business that designs, sources, manufactures, imports, markets, sells, and distributes promotional merchandise, primarily to customers in the casino and entertainment industry. Defendants market and offer for sale a variety of promotional merchandise to customers.

38. Upon information and belief, Defendants sell promotional products to customers in bulk though their Power Promotions business, which Defendants' customers then distribute to patrons in large events hosted at casino and other entertainment venues across the country.

39. Power Promotions also filed to register and registered the "Loulu" (Reg. # 6,944,654) and "Journeyman" (Reg. # 7,001,714) word marks to use in

connection with their promotional products, including in Class 18 for goods such as handbags, purses, clutch bags, luggage, backpacks, carry-all bags, and duffel bags.

40. Rather than develop their own designs, Defendants intentionally designed, manufactured, sourced, imported, advertised, offered for sale, sold, and distributed products bearing designs that closely replicate Louis Vuitton's iconic Monogram Design Trademark, and exactly copy the Décor Florale Design Trademark and each of Louis Vuitton's Stylized Flower Design Trademarks. Defendants kept the entirety of the famous Louis Vuitton Monogram Design intact with one exception; they replaced the interlocking LV Logo Design with their own "LL" or "Journeyman" logos. Defendants' Infringing Monogram Design 1 and Infringing Monogram Design 2 are shown below:

| **Infringing Monogram Design 1** | **Infringing Monogram Design 2** | **Louis Vuitton Monogram Design** |
|---|---|---|
|  |  |  |

41. To advertise, promote, and offer for sale the Infringing Goods, Defendants distributed product catalogs, marketing materials, physical displays, and online materials with images of the Infringing Products. Defendants also touted the Infringing Products as "Lux Monogram Mahogany" products, alluding to Louis Vuitton's iconic Monogram Design.

42. A representative image of a product catalog that Defendants used to market the Infringing Goods is shown below:




43. Representative images of Infringing Products advertised, offered for sale, sold, and distributed by Defendants appear below:

| Representative Infringing Products | | | |
|---|---|---|---|
|  |  |  |  |
|  | |  | |

| | |
|---|---|
|  |  |

44. Some products also included studied replicas of Louis Vuitton's other famous trademarks such as the Louis Vuitton S-Lock Design Trademark ("Infringing S-Lock Design"), as shown below:

| **Infringing S-Lock Design** | **Louis Vuitton S-Lock Design Trademark** |
|---|---|
|  |  |

45. Defendants also intentionally designed, manufactured, sourced, imported, advertised, promoted, offered for sale, sold, and distributed products featuring copies of Louis Vuitton's iconic Damier Design trademark, including exact copies of Louis Vuitton's iconic squares with a checkered pattern of light and dark with the unusual contrast of weft and warp. Defendants' Infringing Damier Design even replaced the famous "LOUIS VUITTON PARIS" logo in the black square of each pattern segment with Defendants' own "Journeyman" logo. The Infringing Damier Design and Louis Vuitton's Damier Design appear below:

| Infringing Damier Design | Louis Vuitton Damier Design |
|---|---|
|  |  |

46. Representative images of Infringing Products advertised, offered for sale, sold, and distributed by Defendants appear below:

| Representative Infringing Products | | |
|---|---|---|
|  |  |  |
|  |  | |

47. Defendants did not limit their infringing conduct to the Infringing Monogram Designs 1 and 2, Infringing Damier Design, and Infringing S-Lock Design. At the request of Defendants' customers, Defendants even helped customers manufacture and import products with other customized designs that infringe Louis

Vuitton's iconic Monogram Design and Damier Design trademarks by using a customer's requested logo instead of Defendants' "LL" or "Journeyman" logos.

48. Upon information and belief, Defendants also designed, manufactured, imported, sourced, advertised, promoted, offered for sale, sold, and distributed products that infringe other of Louis Vuitton's trademarks beyond the ones shown in the exemplary Infringing Products complained of herein.

49. Upon information and belief, Defendants distributed marketing materials and offered the Infringing Products for sale to numerous prospective and actual customers across the country.

50. Upon information and belief, Defendants sold and distributed over 120,000 Infringing Products to dozens of casino and entertainment venue customers throughout the country over the last several years and earned millions of dollars from the sales.

51. In addition to earning millions of dollars from direct sales of Infringing Products, Defendants deliberately used Louis Vuitton, Louis Vuitton's famous trademarks, and Louis Vuitton's substantial goodwill to effectively link Louis Vuitton with Defendants and their "Loulu" and "Journeyman" brand and related logos, word marks, and products. Defendants did so to attract attention, customers, goodwill, and overall financial and commercial benefit to Defendants, and to increase sales revenue for other product and service offerings of Defendants, including other products featuring the "Loulu" and "Journeyman" brands and logos. Upon information and belief, Defendants sold numerous products and earned millions more in revenue from sales of other products from customers who purchased or were exposed to marketing of the Infringing Products.

52. Defendants also designed, manufactured, sold, and distributed advertising and promotional displays and materials, display cases, backdrops, and signage bearing the Louis Vuitton Trademarks for Defendants' customers to use to further advertise and promote the Infringing Products.

53. Once Defendants sold Infringing Products to customers, Defendants used a fleet of trucks owned and operated by Power Logistics to illicitly transport the Infringing Products across state lines for delivery to Defendants' customers.

54. Defendants' customers then further sold and distributed the Infringing Products to tens of thousands of patrons of their casinos and venues.

55. Defendants' actions are plainly willful. Defendants intentionally copied certain of Louis Vuitton's most famous, iconic, and valuable trademarks to portray a false collaboration with Louis Vuitton and to trade on the significant goodwill associated with Louis Vuitton and the Louis Vuitton Trademarks for their own commercial gain. Defendants did so repeatedly, across multiple product lines, spanning over 120,000 Infringing Products and dozens of customers across the country.

56. The Infringing Products were never approved, licensed, or consented to by Louis Vuitton. The Infringing Products were not accompanied by any disclosure that they were not genuine Louis Vuitton Products or that Defendants and their customers are not connected to, sponsored by, or affiliated with Louis Vuitton.

57. Defendants' willful conduct has caused and will continue to cause damage to Louis Vuitton, the Louis Vuitton Trademarks, and the goodwill embodied therein. Defendants' actions have caused and will continue to cause irreparable harm

to Louis Vuitton's reputation, goodwill, and ability to control its brand and image unless enjoined.

**FIRST CAUSE OF ACTION**

**(Trademark Counterfeiting – 15 U.S.C. § 1114)**

58. Louis Vuitton hereby incorporates by reference and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

59. The actions of Defendants as described in this Complaint constitute trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

60. Defendants have used spurious designations that are identical with, or substantially indistinguishable from, the Louis Vuitton Trademarks, including but not limited to The Décor Florale Design Trademark, The Stylized Flower Design Trademarks, the Damier Design Trademark, and the S-Lock Design Trademarks. Defendants have used these spurious designations in connection with the manufacturing, importation, advertising, offering for sale, sale, and distribution of goods for their own financial gain. Defendants' egregious and intentional conduct makes this an exceptional case.

61. Louis Vuitton has not authorized Defendants' use of the Louis Vuitton Trademarks to manufacture, import, advertise, offer for sale, sell, or distribute any products, including the Infringing Products.

62. By their unauthorized use of the Louis Vuitton Trademarks on and in connection with the manufacture, importation, advertisement, offering for sale, sale, and distribution of the Infringing Products, Defendants have used the Louis Vuitton Trademarks in commerce.

63. Defendants' unauthorized use of the Louis Vuitton Trademarks in connection with the manufacture, importation, advertising, promotion, offer for sale, sale, and distribution of the Infringing Products is likely to cause, and has caused, confusion, mistake, and deception among consumers.

64. Defendants' actions are further likely to cause the public to believe that Defendants' Infringing Products are authorized, sponsored, or approved by Louis Vuitton or that Defendants are affiliated, connected, associated, or in some way related to Louis Vuitton.

65. Defendants' actions are further likely to result in Defendants unfairly benefiting from Louis Vuitton's goodwill and reputation, to the substantial and irreparable injury of the public, Louis Vuitton, its respective trademarks, and the substantial goodwill represented thereby.

66. Louis Vuitton has no adequate remedy at law and is thus damaged in an amount not yet determined.

**SECOND CAUSE OF ACTION**

**(Trademark Infringement – 15 U.S.C. § 1114(1))**

67. Louis Vuitton hereby incorporates by reference and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

68. Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), prohibits any person from using in commerce, without the consent of the registrant "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."

69. The Louis Vuitton Trademarks are federally registered, inherently distinctive, and associated in the minds of the public exclusively with Louis Vuitton.

70. Defendants have used Louis Vuitton Trademarks without Louis Vuitton's consent or authorization. Defendants' use, including the manufacturing, importation, advertising, offering for sale, sale, and distribution of the Infringing Products is likely to cause confusion and mistake in the minds of the public, leading the public to believe that the Infringing Products emanate from or originate from Louis Vuitton, or that Louis Vuitton has approved, sponsored, or otherwise associated itself with Defendants or the Infringing Products.

71. Defendants' unauthorized use of the Louis Vuitton Trademarks, including the manufacturing, importation, advertising, offering for sale, sale, and distribution of the Infringing Products as set forth above, has resulted in Defendants unfairly benefiting from Louis Vuitton's advertising and promotion of the Louis Vuitton Trademarks. This has resulted in substantial and irreparable injury of the public, Louis Vuitton, the Louis Vuitton Trademarks, and the goodwill represented thereby.

72. Defendants' acts constitute willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

73. Defendants' acts have caused, and will continue to cause, irreparable injury to Louis Vuitton. Louis Vuitton has no adequate remedy at law and is thus damaged in an amount not yet determined.

**THIRD CAUSE OF ACTION**

**(False Association – 15 U.S.C. § 1125(a))**

74. Louis Vuitton hereby incorporates by reference and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

75. Defendants' unauthorized use of the Louis Vuitton Trademarks on the Infringing Products and in related promotional and advertising materials in connection with Defendants' own goods, services, advertising, marketing, and commercial activities constitutes use in commerce and a false association and false designation of origin.

76. Defendants' conduct is likely to cause confusion, mistake, or deception as to the affiliation or connection of Defendants with Louis Vuitton and as to the origin, sponsorship, association, or approval of Defendants' goods and services by Louis Vuitton. By making unauthorized use, in interstate commerce, of the Louis Vuitton Trademarks, Defendants have created a false association or used a "false designation of origin" that is likely to cause confusion, mistake, or deception as to the affiliation or connection of Defendants with Louis Vuitton and as to the origin, sponsorship, association, or approval of Defendants' goods and services by Louis Vuitton, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

77. Defendants' acts constitute use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to falsely or misleadingly describe and/or represent Defendants' products as those of Louis Vuitton, and also give the false impression that Defendants are connected to, sponsored by, or otherwise affiliated in some way with Louis Vuitton in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

78. Defendants' wrongful acts will continue unless enjoined by this Court.

79. Defendants' acts have caused, and will continue to cause, irreparable injury to Louis Vuitton. Louis Vuitton has no adequate remedy at law and is thus damaged in an amount not yet determined.

**FOURTH CAUSE OF ACTION**

**(Trademark Dilution – 15 U.S.C. § 1125(c))**

80. Louis Vuitton hereby incorporates by reference and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

81. The Monogram Design Trademarks and the Damier Design Trademarks are among the most famous and distinctive trademarks in the world. Through extensive, continuous, exclusive, and widespread use, significant advertising and promotion, and substantial sales of high-quality luxury goods, the Monogram Design Trademarks and the Damier Design Trademarks have become widely recognized by the general consuming public in the United States as designating a single source—Louis Vuitton. The Monogram Design Trademarks and the Damier Design Trademarks have become associated with luxury, prestige, and exceptional quality.

82. Long prior to Defendants' unlawful conduct described herein, the Monogram Design Trademarks and the Damier Design Trademarks had become famous within the meaning of 15 U.S.C. § 1125(c). Defendants' actions occurred well after the marks achieved such widespread recognition.

83. As alleged above, Defendants used in commerce reproductions, counterfeits, and colorable imitations of the Monogram Design Trademarks and the Damier Design Trademarks in connection with the manufacturing, importation,

advertising, promotion, offering for sale, sale, and distribution of the Infringing Goods. Defendants incorporated imitations of the Monogram Design Trademarks and the Damier Design Trademarks into a significant volume of Infringing Products that were imitations of authentic Louis Vuitton Products and were marketed, offered for sale, sold, and distributed in over to dozens of casino and entertainment venue customers across the country.

84. Defendants' use of these imitations of the Monogram Design Trademarks and the Damier Design Trademarks is likely to cause dilution of the distinctive quality of the marks by blurring. Specifically, Defendants' use creates an improper association between the Monogram Design Trademarks and the Damier Design Trademarks and Defendants' goods and services, thereby impairing the distinctiveness of the Monogram Design Trademarks and the Damier Design Trademarks as unique identifiers of Louis Vuitton Products. By selling and distributing the Infringing Products in in bulk over several years across the country, Defendants reduce the ability of the Monogram Design Trademarks and the Damier Design Trademarks to serve as a singular and exclusive designation of source.

85. Defendants' conduct is also likely to cause dilution by tarnishment. By associating imitations of the Monogram Design Trademarks and the Damier Design Trademarks with Infringing Products ultimately distributed as promotional giveaways in casino and entertainment venue settings, Defendants harm the reputation and prestige of the Louis Vuitton brand. The unauthorized use of inferior or uncontrolled goods in connection with the Monogram Design Trademarks and the Damier Design Trademarks diminishes the luxury image cultivated by Louis Vuitton and risks creating negative associations in the minds of consumers.

86. Defendants' acts were undertaken intentionally and with knowledge of the fame and value of the Monogram Design Trademarks and the Damier Design Trademarks. Upon information and belief, Defendants deliberately selected designs that mimic the famous Monogram Design Trademarks and the Damier Design Trademarks in order to capitalize on their recognition and consumer appeal.

87. Defendants' actions have caused, and unless restrained will continue to cause, irreparable injury to Louis Vuitton. Louis Vuitton has no adequate remedy at law to compensate for the ongoing harm to the distinctiveness and reputation of the Monogram Design Trademarks and the Damier Design Trademarks.

88. Defendants' acts constitute trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

**FIFTH CAUSE OF ACTION**

**(Deceptive Trade Practices – NRS 598.0915)**

89. Louis Vuitton hereby incorporates by reference and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

90. In the course of their business, Defendants knowingly passed off goods for sale as those of Louis Vuitton in violation of NRS 598.0915(1) by using the Infringing Monogram Designs 1 and 2, Infringing Damier Design, and Infringing S-Lock Design in connection with the Infringing Products marketed, offered for sale, sold, and distributed to their customers and ultimate end users. The Infringing Products include close replicas and/or exact copies of the Louis Vuitton Trademarks and are imitations of authentic Louis Vuitton Products as alleged herein.

91. In the course of their business, Defendants made false representations as to the source, sponsorship, approval, or certification of goods for sale or lease in

violation of NRS 598.0915(2) by using the Infringing Monogram Designs 1 and 2, Infringing Damier Design, and Infringing S-Lock Design in connection with the Infringing Products marketed, offered for sale, sold, and distributed to their customers and ultimate end users. The Infringing Products include close replicas and/or exact copies of the Louis Vuitton Trademarks and are imitations of authentic Louis Vuitton Products as alleged herein.

92. In the course of their business, Defendants made false representations as to affiliation, connection, association with Louis Vuitton in violation of NRS 598.0915(3) by using the Infringing Monogram Designs 1 and 2, Infringing Damier Design, and Infringing S-Lock Design in connection with the Infringing Products marketed, offered for sale, sold, and distributed to their customers and ultimate end users. The Infringing Products include close replicas and/or exact copies of the Louis Vuitton Trademarks and are imitations of authentic Louis Vuitton Products as alleged herein.

93. As a direct and proximate result of Defendants' deceptive trade practices, Louis Vuitton has suffered damages in an amount to be proven at trial, and is entitled to its damages, equitable relief, and its costs and reasonable attorneys' fees pursuant to NRS 41.600.

## PRAYER FOR RELIEF

WHEREFORE, Louis Vuitton prays for judgment against Defendants as follows:

1. A finding that Defendants have infringed the Louis Vuitton Trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, as alleged in the First Cause of Action;

2. A finding that Defendants have infringed the Louis Vuitton Trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, as alleged in the Second Cause of Action;

3. A finding that Defendants have falsely associated themselves and their goods with Louis Vuitton in violation of 15 U.S.C. § 1125(a), as alleged in the Third Cause of Action;

4. A finding that Defendants have diluted the Louis Vuitton Trademarks in violation of 15 U.S.C. § 1125(c), as alleged in the Fourth Cause of Action;

5. A finding that Defendants have engaged in deceptive trade practices in violation of NRS 598.0915, as alleged in the Fifth Cause of Action;

6. Preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116, NRS 41.600, applicable Nevada law, and the Court's equitable powers, enjoining Defendants and their officers, agents, servants, employees, attorneys, successors, assigns, and all persons in active concert or participation with them from, directly or indirectly:

a. acquiring, manufacturing, importing, purchasing, advertising, promoting, offering for sale, selling, distributing, giving away, or otherwise disposing of the Infringing Products or any other goods bearing the Louis Vuitton Trademarks, or any reproduction, counterfeit, copy, or colorable imitation thereof;

b. counterfeiting, infringing, diluting, or otherwise violating any of the Louis Vuitton Trademarks;

c. falsely representing, expressly or by implication, any affiliation, connection, sponsorship, or association with Louis Vuitton;

d. assisting, aiding, or abetting any other person or entity, including Defendants' suppliers, customers, and affiliates, in engaging in any of the foregoing acts; and

e. otherwise unfairly competing with Louis Vuitton in any manner;

7. An order requiring Defendants to deliver up for destruction all Infringing Products, promotional materials, advertisements, mailers, packaging, labels, displays, and any other materials in their possession, custody, or control bearing the Louis Vuitton Trademarks or any reproduction, counterfeit, copy, or colorable imitation thereof;

8. An order requiring Defendants to engage in an appropriate and fulsome corrective advertising campaign to inform all impacted and potentially impacted members of the consuming public that the Infringing Products are not authentic Louis Vuitton products, that Defendants are not, and have never been associated with Louis Vuitton, and that Defendants had no right to engage in the advertisement or dissemination of the promotional materials and that by doing so, they caused substantial and irreparable harm to Louis Vuitton.

9. An award of Defendants' profits and Louis Vuitton's actual damages, and the costs of this action pursuant to 15 U.S.C. § 1117(a);

10. Alternatively, at Louis Vuitton's election at any time before final judgment, statutory damages pursuant to 15 U.S.C. § 1117(c) of up to $2,000,000 per counterfeit mark per type of goods;

11. Treble damages and/or enhanced damages to the maximum extent permitted by law, including pursuant to 15 U.S.C. § 1117(b) and (c), based on Defendants' willful conduct;

12. Actual damages and punitive damages pursuant to NRS 42.005, and attorneys' fees and costs pursuant to NRS 41.600(3);

13. An award of attorneys' fees, investigative fees, and costs pursuant to 15 U.S.C. § 1117 and any other applicable authority;

14. An award of pre-judgment and post-judgment interest as permitted by law; and

15. Such other and further relief as the Court deems just and proper.

MC LAW NEVADA

Robert McCoy, No. 9121
1775 Village Center Circle, Suite 110
Las Vegas, Nevada 89134

STEPTOE LLP
Michael J. Allan (*pro hac vice*)
Joseph F. Ecker (*pro hac vice*)
1330 Connecticut Avenue NW
Washington, DC 20036

Attorneys for Plaintiff Louis Vuitton Malletier S.A.S.

## EXHIBIT INDEX

Exhibit 1: U.S. Registration Certificates for the Louis Vuitton Trademarks